UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STACEY PIERCE-NUNES, | No. C 14-0796 JST (LB) |
| Plaintiff(s), | **ORDER REGARDING THE PARTIES' JOINT DISCOVERY DISPUTE LETTER DATED JUNE 3, 2014** |
| v. | |
| TOSHIBA AMERICA INFORMATION SYSTEMS, INC., | [Re: ECF No. 31] |
| Defendant. | |

_____/

**INTRODUCTION**

The complaint at ECF No. 1 is a putative class action case by a New York plaintiff on behalf of a New York class alleging false advertising in violation of New York state law by Defendant Toshiba America Information Systems, Inc., about its "LED TVs," which were marketed as superior to LCD TVs. *See* Complaint, ECF 1; *see also* Joint Letter Brief, ECF No. 31 at 1.[1] The parties stipulated to an extension of time for Toshiba to answer the complaint, *see* ECF Nos. 9, 24, and Toshiba filed a motion to transfer the action either to the Central District of California, where Toshiba is headquartered, or to the Southern District of New York, which has a nexus to the class, the Plaintiff, and the sale that gave rise to the lawsuit. *See* ECF No. 2 at 2. The parties agreed to engage in

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document

C 14-0796 JST (LB)

discovery that is relevant to the motion to transfer and to file a letter brief if they could not work things out themselves. *See* Joint CMC Statement, ECF No. 29 at 2. The discovery at issue here is about certain representations made by Scott Ramirez, Toshiba's Vice President of Product Marketing and Development for Visual Products, in support of the motion to transfer. *See* Joint Letter Brief, ECF No. 31 at 1, 4; Ramirez Decl., ECF No. 23-1. The parties disagree about whether a short deposition about limited issues is enough (which is Toshiba's position), or whether Toshiba must respond to broader interrogatories before the deposition (which is Plaintiff's position). *See* Joint Letter Brief, ECF No. 31.

On June 11, 2014, the court set a hearing on the joint discovery letter brief. *See* ECF No. 34. On June 18, 2014, before the hearing, Plaintiffs filed a first amended complaint that adds named plaintiffs from Florida and Texas. *See* ECF No. 36. Plaintiffs now allege violations of California false advertising laws on behalf of a nationwide class, and they allege violations of New York, Florida, and Texas false advertising laws on behalf of New York, Florida, and Texas subclasses. *Id.* at 24-36

The court held a hearing on June 18, 2014 and orders the discovery discussed below.

### STATEMENT

### I. ALLEGATIONS IN COMPLAINT

The fact allegations in the two complaints are substantially the same. Given the filing of the first amended complaint earlier today, the order generally cites to the original complaint and adds in relevant allegations from the first amended complaint.

Plaintiff Stacey Pierce-Nunes purchased a Toshiba-brand "LED TV" for personal use. *See* Complaint, EFC No. 1. Pierce- Nunes selected the "LED TV"over an LCD TV. *See id*. ¶ 7. The "LED TV" was more expensive. *Id.* LCD TVs, like Plasma TVs, have a flat and light panel. *Id.* ¶ 30. But LCD TVs use a different display technology called liquid crystal displays (LCD). *Id.* Liquid crystals do not emit light themselves and must be lit by a separate light source. *Id.* ¶ 31. Originally, the light source primarily used was cold cathode florescent lights (CCFLs). *Id.* ¶ 34. Then TV manufacturers then introduced light emitting diodes (LED), instead of CCFLs, that illuminated the LCD panel. *Id.* at ¶ 35. This did not change the way the LCD panels generated the

screen image. *Id.*

In 2009, Toshiba was the first to introduce an LCD TV with an LED light, and it was followed by generations of the LED-lit LCD TV. *Id.* ¶ 37. At first, only a small fraction of Toshiba's total LCD TV and flat panel sales were represented by LED-lit LCD TVs. *Id.* At the time the original complaint was filed, all TVs listed on Toshiba's website consisted of LED-lit LCD TVs. *Id.*

Initially, Toshiba marketed the LCD TV as an LED-lit LCD TV. *Id.* ¶ 38. No effort was made to conceal that although LED lighting was used, the TVs still utilized liquid crystal displays. *Id.* Months after distributing LED-lit LCD TVs, Toshiba dropped all references to the TVs as being LCD TVs and marketed the LED-lit LCD TVs as a new, advanced, technologically superior TV, an "LED TV." *Id.* ¶ 42. The "LED TV" allegedly was different from and better than LCD TVs, although both TVs used the same liquid crystal displays to generate images. *Id.* This marketing scheme resulted in the product suddenly becoming the leader of the industry. *Id.* ¶ 44. Prior to the false advertising, CCFL-lit LCD TVs dominated LCD TV sales in the U.S., with over 97% sales. *Id.*

For years Toshiba's website prompted customers to choose between LED TVs, LCD TVs, and Plasma TVs. *Id.* ¶ 47. The LCD Category described the applicable display technology, while the "LED" category identified only the light source, falsely implying that "LED," not LCD, was the display technology. *Id.* The clickable images online for "LED TVs" made no reference to LCD display TVs. *See* Complaint, ECF No. 1.

LED TVs are currently available for sale but use technology that is years away from being available to mainstream purchasers at a reasonable price. *Id.* ¶ 51. Actual LED TVs use LED displays instead LCD or plasma displays. *Id.* The LED displays are self-illuminating and do not require an independent source of light and do not contain liquid crystal technology. *Id.*

Pierce-Nunes alleges she was misled into believing that she purchased an LED TV and as a result, suffered damage in the form of paying a premium price. *Id.* ¶ 57. But for Toshiba's deceptive advertising, Pierce Nunes and other class members would have purchased a comparable CCFL LCD TV. *Id.* ¶ 58. On behalf of a New York class of consumers, Pierce-Nunes, a New York state resident, alleges that Toshiba falsely advertised the TVs to increase sales and profits in violation of New York state law. *Id.* at ¶¶ 2, 7, 60, 67-88.

1	The first amended complaint adds a national class alleging violations of of California's Unfair
2	Competition Law (Cal. Bus. & Prof. Code § 1700 *et seq.*), False Advertising Law (*Id.* § 17500 *et*
3	*seq.*), and Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*).  First Amended
4	Complaint, ECF No. 36 at 24, 27-30.  It also alleges violations of New York, Florida, and Texas
5	false advertising laws on behalf of New York, Florida, and Texas subclasses.  *Id.* at 24, 30-36

## II. PROCEDURAL HISTORY LEADING TO DISCOVERY DISPUTE

7	On February 21, 2014, Plaintiff filed this proposed class action in the Northern District of
8	California.  *See* ECF No. 1.  On March 31, 2014, the parties stipulated that Toshiba had until May 6,
9	2014 to respond to the complaint.  *See*  ECF No. 31. On May 6, 2014, the parties stipulated that
10	Toshiba would file a motion to transfer  that day and would respond to the complaint by June 26,
11	2014.  *Id.*  On May 6, 2014, Toshiba filed the motion to transfer to either the Central District of
12	California, where it is headquartered, or the Southern District of New York.  Motion, ECF No. 23.

## III.  THE DISCOVERY DISPUTE

14	The discovery dispute is about discovery in aid of Plaintiff's opposition to the motion to transfer,
15	particularly about information in a declaration submitted in support of the motion, which is the
16	declaration of Scott Ramirez, the Vice President of Product Marketing and Development for Visual
17	Products for Toshiba.  *See* ECF No. 31; Ramirez Decl., ECF No. 23-2.  Mr. Ramirez's declaration is
18	a little over a page and says the following: (1) Toshiba's headquarters are in Irvine, California; (2)
19	the persons with responsibility for the televisions at issue in the litigation also work in Irvine
20	(although some are in Tennessee), and there are no persons with responsibility for the televisions at
21	issue in the Northern District of California; (3) to his knowledge, there are no fact witnesses in the
22	Northern District of California; and (5) documents relevant to the litigation are in Irvine (though
23	some are stored in a warehouse in New Jersey) and are not maintained in repositories in the
24	Northern District of California, and he is not aware of any documents relevant to the litigation that
25	are physically located in the Northern District of California.  *See* Ramirez Decl., ECF No. 23-2.
26	On May 14, 2014, the parties stipulated to allow Pierce-Nunes additional time to respond to the
27	motion to give the parties an opportunity to meet and confer regarding "discovery focused on the
28	location of witnesses and documents that may be relevant to the claims in this litigation and may be

relevant to a decision on the Motion." *See* ECF No. 31 at 2. On May 15, 2014, Pierce-Nunes served Toshiba "Interrogatories Related to the Motion to Transfer" and a "Notice of Deposition of Scott Ramirez Related to the Motion to Transfer." ECF Nos. 31-1, 31-2.

The interrogatories are summarized as follows:

(1) identify providers from 2009 to the present who provided marketing and sale services (specifically, marketing, promotion, branding, exhibition, advertising, pricing, or sale) to Toshiba in the United States regarding plasma, CCFL-lit LCD, LED-lit, LED, or OLED TVs in the United States from 2009 to the present;

(2) for each provider in number 1, identify the person responsible for providing the services;

(3) identify all current and former Toshiba employees from 2009 to the present with responsibilities related to the marketing and sales services for the TVs in number 1;

(4) identify the call centers for telephones, emails, and other inquiries maintained for Toshiba's benefit regarding the Toshiba-branded TVs in number 1;

(5) identify all Toshiba employees who participated in the Consumer Electronics Association's definition of "LED TV";

(6) identify all participants in, and date and location of all meetings related in any way to, the promulgation of the definition of "LED TV";

(7) identify all non-retail distributors of the Toshiba-branded TVs in number 1 from 2009 to the present;

(8) identify all retail resellers of Toshiba-branded TVs in number 1 from 2009 to the present;

(9) for the top 10 distributors (by dollar sales volume in LED-lit LCD TVs) identified in number 7, identify the person who interfaced with Toshiba regarding forecasting, purchasing, pricing, resale, marketing, merchandising, and promotion of the TVs in number 1 from 2009 to the present;

(10) same information as in number 9 for the resellers in number 8; and

(11) state the number of Toshiba-brand LED-lit LCD televisions shipped to zip codes in the Northern District of California from 2009 to 2013.

**ANALYSIS**

Plaintiffs contend that the interrogatories – list of employees, third-party service providers, top

wholesalers and retailers, call centers and IT facilities, and participants at a recent trade show association meeting where a new definition of "LED TV" was coined – would enable Plaintiffs to depose witnesses and get an explanation about the relative importance of witnesses or documents relevant to the issue of a motion to transfer under 28 U.S.C. § 1404. *See* Joint Letter Brief, ECF No. 31 at 3. The location of witnesses and documents is important to that inquiry. *Id.* Toshiba responds that the discovery sought by the interrogatories is irrelevant to that question. *Id.* at 4. The sales at issue in the complaint took place in New York (and now, in the amended complaint, also in Florida and Texas). *Id.* There is no nexus to this district *Id.* The deposition it proposes is more than enough to address the issues in the motion. *Id.* Plaintiffs counter that it is important to know where witnesses, including former employees, are located because the Northern District of California might be more convenient than either the Central District of California or the Southern District of New York. *Id.*

No one argues that the information is not relevant to the lawsuit. Both parties have framed the issue is whether it is relevant to the motion to transfer. The transfer inquiry is a discretionary decision for the district court, not this court. Still, considering the factors relevant to the transfer inquiry is instructive in determining the appropriate reach of discovery geared toward Plaintiffs' opposition to the transfer motion. Factors relevant to the transfer inquiry under section 1404(a) include the following:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising Inc.*, 211 F.3d at 498–99. Courts may also consider "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

At the hearing, the parties essentially agreed that the new complaint does not alter the transfer inquiry. The California claims are asserted on behalf of a national class (presumably based on

1  Toshiba's being headquartered here) as opposed to being asserted on behalf of a subclass of
2  California purchasers.  All named plaintiffs are from states other than California (specifically, New
3  York, Florida, and Texas) and assert state false advertising claims under the laws of those states on
4  behalf of subclasses of consumers from those states.  Thus, Toshiba said that it does not plan to
5  amend its motion, and the existing briefing schedule – which postpones Plaintiffs' opposition and
6  Toshiba's reply until after discovery in aid of the venue motion – will address the issue sufficiently.
7      Toshiba's counsel also said at the hearing that Toshiba America is a small operation and
8  essentially conveyed that Mr. Ramirez is the person in charge of marketing and the person with
9  knowledge of the genesis of the alleged false advertising in the form of the representations about
10 "LED TV."  Toshiba also said that it would try to produce an organizational chart of employees
11 involved in marketing and sales.  Plaintiffs pointed out that its interrogatories were geared to an
12 efficient and short deposition of perhaps only an hour.  Given the assertions in Mr. Ramirez's
13 declaration, his position at Toshiba America, and Toshiba's representations, and on this record, the
14 court concludes that the deposition of Mr. Ramirez is enough to address the issues in the transfer
15 motion.  The court does, however, give Plaintiffs a half-day to depose Mr. Ramirez.

## CONCLUSION

17 The court orders a half-day deposition of Mr. Ramirez.
18 This disposes of ECF No. 31.
19 **IT IS SO ORDERED.**
20 Dated: June 19, 2014

LAUREL BEELER
United States Magistrate Judge